# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-00760-SCT

*ARCHIE WAYNE COURTNEY, INDIVIDUALLY AND COURTNEY PLUMBING, INC.*

*v.*

*MERCHANTS AND MANUFACTURERS BANK AND HOLIFIELD AND SONS WRECKER SERVICE*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/92 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | THOMAS J. LOWE, JR. |
| ATTORNEY FOR APPELLEES: | DANNY HENSON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 9/19/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/10/96 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

**¶1.** The present case calls upon this Court to review the ruling of a trial judge that a creditor bank held a proper security interest in a backhoe owned by a debtor even though the promissory note from which this security interest supposedly arose did not originally list said backhoe as security. The bank asserts that the failure to originally list the backhoe as security on the note resulted from a clerical error on its part, and that, upon noticing said error, it merely added the backhoe to the note without securing consent from or even informing the customer. On these facts, this Court concludes that the bank does not possess a valid security interest in the backhoe, even though the parties may have originally intended for the backhoe to serve as security for said note. Accordingly, we reverse.

## II. SUMMARY OF THE FACTS AND CASE

¶**2.** Merchants and Manufacturers Bank, regularly provided loans to Archie Courtney, owner of Courtney Plumbing, Inc., in connection with Courtney's plumbing and septic tank business. These loans typically took the form of promissory notes, which were secured by both purchase money and non-purchase money security interests in Courtney's heavy equipment used in his business. Over a period of time, these separate promissory notes would typically be combined or consolidated into one.

¶**3.** Courtney experienced severe financial problems, and he filed for Chapter 13 Bankruptcy on February 18, 1992. On April 14, 1992, the Bank filed suit against Courtney, alleging that he was in default on two of the promissory notes. The Bank requested that Courtney, who was serving as his own attorney, be required to pay the balance on the notes and to surrender possession of various collateral which he had pledged as security on the notes. Courtney does not dispute the monies owed to the Bank; he only contests whether the Bank holds a proper security interest in one piece of equipment which it seized.

¶4. At the hearing on the Bank's complaint on May 7, 1992, the primary dispute centered around a 1986 Case 580E Super E backhoe, which was listed as security on the Bank's copy of one of the promissory notes, but not on Courtney's copy thereof. When asked about this discrepancy, Tommy Stroud, vice-president of the Bank, testified that his secretary had originally forgotten to type the backhoe on the note and, realizing her mistake at a later date, had added the backhoe to the instrument. The Bank did not seek Courtney's ratification of the addition of the backhoe, however, nor did they inform him that the note had been altered.

¶5. Following a hearing, the trial judge entered an order of possession in favor of the Bank with regard to the equipment listed as security on the promissory note, including the backhoe. Courtney subsequently filed a complaint against the Bank for allegedly seizing property in addition to that which they were entitled to pursuant to the order of possession, to which the Bank responded with a motion for summary judgment. The trial court granted the summary judgment motion, and Courtney timely filed an appeal from said ruling as well as from the order of possession entered in favor of the Bank with regard to the backhoe.

### III. ANALYSIS OF THE LAW

#### A. DID THE TRIAL COURT ERR AS A MATTER OF LAW IN DETERMINING THAT MERCHANTS AND FARMERS BANK GAINED A SECURITY INTEREST IN A BACKHOE AS A RESULT OF THE ADDITION OF SAID BACKHOE TO A PROMISSORY NOTE AFTER IT HAD BEEN SIGNED BY COURTNEY?

¶6. Given that the present appeal involves a negotiable instrument, the facts of this appeal are properly considered in the context of Article 3 of the Uniform Commercial Code, which is incorporated into Mississippi Code Annotated § 75-3-101 et seq. A revised version of Article 3 became effective in this State beginning on January 1, 1993, but, given that the events surrounding this case and the hearing at the lower court all occurred prior to 1993, this Court should properly consider the pre-revision version of Article 3 with regard to the present appeal. There is no indication in the record that the trial judge considered the present issues in the context of Article 3, nor that he made a specific finding with regard to the issues on appeal, and it is thus appropriate for this Court to

conduct a *de novo* review of the case. The pertinent facts of the case are not in dispute among the parties, and it is thus proper for this Court to decide the case as a matter of law.

¶7. The applicable code section is Miss. Code Ann. §75-3-407 (1972), dealing with the alteration of instruments. This section provided pre-revision that:

> (2) As against any person other than a subsequent holder in due course
>
> (a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;
>
> (b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

¶8. Applying Miss. Code Ann. §75-3-407(2) to the facts of the present case, the Bank's alteration of the note does not serve to discharge Courtney from his obligations under the note, given that the Bank did not act in a fraudulent manner in adding the backhoe to the note. Nevertheless, the Code provided that the note may be enforced "according to its original tenor," which courts have interpreted as meaning according to the original terms of the note before it was altered. *See*: **Bluffestone v. Abrahams**, 607 P.2d 25 (Ariz. App. 1979). Indeed, the revised version of § 75-3-407 explicitly changes the phrase "original tenor" to "original terms", and this Court considers said interpretation to be the most logical one.

¶9. Unsurprisingly, a review of the history of §75-3-407 reveals no Mississippi cases interpreting this section of the Code. However, persuasive authority is found in *Abrahams*, in which the Court of Appeals of Arizona was faced with a very similar fact pattern to that in the present case. In *Abrahams*, a provision providing for the payment of attorney's fees was added to a note, but Abrahams' copy of the note bore no such provision, and he was not informed of the alteration prior to signing it. *Abrahams*, 607 P.2d at 26. The Arizona court held that, while the alteration of the note may not have been fraudulent, Abrahams did not consent to the addition of the attorney's fees clause and, as such, the note should be enforced, but without the attorney's fees clause. With regard to the issue of consent, the court stated:

> Consent to the alteration of an instrument may be implied by the acts of the parties. (citation omitted). In order to be binding, however, an implication of consent arising from the circumstances must be plain and ambiguous.

*Id.* at 28. In the present case, Courtney was not even informed of the alteration made to the note, and he was allowed to operate under the assumption that his copy of the note represented the final terms. Under these circumstances, this Court can not conclude that Courtney authorized or consented to the alteration of the terms of the note.

¶10. It is noteworthy that **Am Jur Legal Forms 2d**, "Alteration of Instruments" § 18:5 and § 18:6 provide two suggested provisions dealing with clerical mistakes in drafting instruments. Both forms require that a party either request that the mistake be corrected or to otherwise secure consent for the alteration. Section 18:5, for example, provides, in part, that:

> any clerical errors or mistakes contained in the (instrument) may be corrected by any of the

parties, with the consent of all of the parties evidenced by each party initialing any such correction.

These legal forms obviously provide very little in the way of legal authority, but they do underscore the point that, while clerical errors do occur in the drafting of instruments, corrections or alterations of the instruments are properly made with the knowledge and consent of the parties involved. It would have been a simple matter for the Bank to request that Courtney initial the correction to the note, and, failing such consent, the Bank could have taken other legal steps to protect its rights, such as a suit for reformation.

¶11. The financing statement was clearly executed in conjunction with the promissory note and, except for the omission of the backhoe in the note, the two documents are largely identical with regard to the property described as security. Thus, the logical inference from the terms of these two documents is that the parties originally intended that the backhoe be used as security for the note, and the Bank would appear to have had a good case for reformation of the promissory note if Courtney had refused to consent to the alteration. Reformation of an instrument is not specifically dealt with in the context of Article 3, but according to 4 AmJur 2d "Alteration of Instruments" § 66:

> The general rule is that a court of equity, or a court of general jurisdiction in the exercise of its equitable powers, may reform an instrument that has been fraudulently altered. . . . Principles of equity generally apply to instruments subject to the Uniform Commercial Code as well.

¶12. Taking the aforementioned steps would have doubtlessly required more time and effort on the part of the Bank than merely adding the backhoe to the note, but making said efforts was incumbent upon the Bank, given that the error was its alone. The law offers a mistaken party protection when a clerical or other such error causes a document to not reflect the intent of the parties, but the law will not provide such protection if the party in error merely uses self-help remedies without even notifying the innocent party. The Bank did not follow the proper procedures, and, as such, should properly bear the responsibility for its own error. Accordingly, this Court must reverse the order granting possession of the backhoe to the Bank and render judgment that the Bank holds no proper security interest in the backhoe.

### B. DID THE TRIAL COURT ERR AS A MATTER OF LAW IN RULING THAT MERCHANTS & MANUFACTURERS BANK HAD NOT WRONGFULLY CONVERTED CERTAIN ITEMS OF EQUIPMENT FROM COURTNEY?

¶13. Courtney asserts a second assignment of error which the Bank claims has been rendered moot since the filing of the present appeal. The Bank was granted summary judgment with regard to Courtney's claim that they had wrongfully seized property of his beyond that permitted by the order of possession entered in the initial hearing. It is represented to this Court in the Bank's brief that they have returned to Courtney the equipment which he alleges the Bank wrongfully seized, and that "there is now no live issue remaining between the parties herein." This allegation is unverified by Courtney, and this case is therefore remanded to the Circuit Court of the Second Judicial District of Jones County in order that said Court may confirm that the Bank's assurances are accurate.

¶14. In the event that Courtney represents to the circuit court in writing or in person that the dispute has in fact been resolved and that the equipment not subject to the Bank's security interest has in fact

been returned to his possession, then no further proceedings need be held in this regard. Based on the Bank's admission that they erroneously seized property beyond that permitted under the order of possession, this Court reverses the summary judgment ruling in favor of the Bank and remands for proceedings consistent with this opinion.

¶15. **REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**