PIERCE *v.* CHAPMAN.

(Division B. Oct. 24, 1932.)

[143 So. 845. No. 30181.]

W. M. Everett, of Hickory, for appellant.

C. E. Johnson, of Union, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Frank Pierce filed suit in the circuit court of Newton county against Clarence Chapman, a member of the board

of supervisors of said county, and the United States Fidelity & Guaranty Company, a surety on his official bond, averring that Chapman was duly elected, qualified, and acting as a supervisor of district No. 5 of Newton county for the term beginning January 1, 1928, and filing with the declaration a copy of the official bond.

It was further alleged that continuously from 1886 Frank Pierce, appellant here, had been the owner in fee simple, and in the open, notorious, and full possession of a certain tract of land described in the declaration, and that he was the owner of said land during the time the injuries complained of in the declaration were inflicted; that said land was fenced and posted in conformity to law. It was further alleged that Clarence Chapman, while acting, or pretending to act, under the color and official sanction and scope of his office as supervisor, gave orders to certain hands to go upon said land and cut certain trees, and, while so acting under the color and official sanction of Chapman's office as aforesaid, said hands, as his agents, went upon said land and cut therefrom a certain number of trees, particularly described in the declaration, without the plaintiff's consent and within twelve months before this suit was begun.

The plaintiff then demanded judgment for the statutory value of said trees under the trespass chapter, amounting to one thousand three hundred fifty dollars, and actual value of sixty-four dollars and forty-one cents, a total of one thousand four hundred fourteen dollars and forty-one cents, of said Chapman and the surety on his official bond.

The official bond was in the usual form, and conformed to the statutory requirements.

The defendants demurred to the declaration upon the grounds: (1) That it shows no cause of action; (2) that the suit is brought against Clarence Chapman in his official, and not his individual, capacity, while the declaration shows upon its face that every wrong complained

of was committed in his private, and not his official, capacity; (3) that the declaration shows on its face that every alleged wrong was not, and could not have been, committed in Clarence Chapman's official capacity; (4) that, if the acts complained of were not within his duties as a supervisor, he could only be held as an individual; (5) that Clarence Chapman cannot be held as an individual because suit is brought against him as an officer; (6) that the United States Fidelity & Guaranty Company is not liable because it was only liable for acts of Chapman in his official capacity.

This demurred was sustained, and the court dismissed the case, from which this appeal is prosecuted.

It seems to be the theory of the defendant that, although the declaration alleges that he was acting under the color, and by authority, of his office, or purporting to so do, yet the acts complained of were not such as he could be held liable to as a member of the board of supervisors, and that, consequently, he was not liable officially, and the surety company was not liable, and that judgment could not be brought against him personally because brought against him as an officer.

We think the declaration is sufficient to show that the defendant, Chapman, the supervisor, was acting under the color of his office, and that the trees were cut, by his orders, to be used for some public purpose or some pretended public use, or that the land over which the trespass was committed was intended to be devoted to some public use.

It is, of course, not necessary that the declaration show the details of the transaction, and not necessary to specify in detail, or descend to the evidence in the case to show the exact purpose of cutting, or for what exact use it was intended. The declaration could have been more particular, but we think it was good against a demurrer. If any information was needed which was not contained in the declaration, it could have been reached by a motion for a bill of particulars.

The acts complained of could have been done in a lawful manner by appropriate proceedings by the board of supervisors, and, under some circumstances, by an individual member thereof. The statute gives individual members the right to do certain things in emergencies, and to make certain emergency contracts. Also, in some instances, a supervisor acts as a commissioner, and, where he acts by authority of his office, he is liable, under color of his office, for any wrong he does by which a citizen is injured.

In 22 R. C. L., p. 506, section 190, it is said that, "In a considerable number of cases, the courts have been called on to decide whether a particular act constituted a wrong or misconduct within the terms of an official bond. Broadly speaking an official bond covers torts committed by the officer under color of his official right. But where an individual is injured by the private and personal acts of an officer, and not by acts which he has done either by virtue of his office or under color of his office, his sureties are not liable. For example, if a public officer having no process in his hands does an act which he has no right to do, he is not considered as acting officially and therefore the sureties on his official bond are not answerable for his conduct. But if having a valid process he commits a trespass in seizing property not subject to the process, those injured by his acts may proceed against him and his sureties on his official bond. And again, if the officer professes to act under the sanction of a writ, the responsibility of his sureties for any malfeasance in its execution is not discharged by reason of defects or errors or total illegality in the process. It has very properly been said that the sureties do not bind themselves to protect the public against every act of their principal, nor do they become his sureties to keep the peace. In the books there are to be found much refinement and quibbling in behalf of sureties on official bonds, as to whether the act of the officer was done colore officii,

or virtute officii. For example it has been said: 'Acts done virtute officii are where they are within the authority of the officer, but in doing them he exercises that authority improperly, or abuses the confidence which the law reposes in him; while acts done colore officii are where they are of such a nature that his office gives him no authority to do them.' (Gerber v. Ackley, 37 Wis. 43, 19 Am. Rep. 751.) The intricacies of this discussion are satisfactorily avoided by those courts which in accordance with the weight of authority hold that sureties are liable for the acts of an official performed under color of his office as well as for those done by virtue of his office."

We think the declaration was sufficient to bring defendants within the principle here announced.

It would, however, have been error for the court to have sustained a demurrer as to the defendant, Chapman, even in his individual capacity. Under our law, the only requirement of pleadings is to set forth the facts from which the lawsuit arises, and the form of the action is not so essential as to avoid the substance of it.

The statute on official bonds seems to contemplate that suit must be brought in the name of the state for the use of the person injured, but, had the decision of the court rested on this ground, the plaintiff would, no doubt, have amended his declaration.

The judgment of the court below will be reversed, and the cause remanded, with leave to the appellant to amend his declaration within thirty days from the date the mandate reaches the court below.

Reversed and remanded.