TAGGART *et al. v.* PETERSON.

(Division B. May 16, 1938.)

[181 So. 137. No. 33211.]

Wynn, Hafter & Lake and Percy & Farish, all of Greenville, for appellants.

W. S. Thompson, of Greenville, for appellee.

86

**Ethridge, P. J.,** delivered the opinion of the court.

L. B. Peterson brought suit against William S. Taggart, Chief of Police of the City of Greenville, Miss., and the United States Fidelity & Guaranty Company, surety on his official bond, for an assault committed upon Peterson by said Taggart, claiming actual damages for $2,500 and $2,500 punitive damages. The jury returned a verdict for $300 upon which judgment was entered against Taggart and his surety, from which this appeal is prosecuted.

As in most cases, there is in the case at bar considerable conflict in the evidence, but as the jury found for Peterson, his version of the facts must be treated as establishing the facts in the case. According to his testimony, he and his employee, Willingham, were engaged in a conversation on Sunday morning, on the streets in Greenville, when Taggart arrested Willingham for improperly parking his automobile. Peterson protested against the arrest and some conversation occurred between him and Taggart, whereupon Taggart notified Peterson that he would be arrested too for interfering with an officer in the discharge of his official duty, using violent and profane language. Taggart did not then take either party into actual custody, but went to the police headquarters and had charges preferred against them, notifying them to appear in court on Monday. In the meantime, Peterson had entered a cafe and procured fruit juice and coffee, and, according to his version, while he was seated on a stool, Taggart entered the cafe asking Peterson what he had against him, to which Peterson replied: "I haven't seen you for six months, you haven't spoken to me. I have got nothing against you." And thereupon Taggart struck Peterson knocking him off the stool and breaking his glasses, all the while using profane language. The version of Taggart is to the effect that he went into the cafe not for the purpose of

looking up Peterson and did not know he was in there, but seeing him, asked what he had against him (Taggart) and if he had anything to get it out, and that Peterson rose up as if to assault Taggart, and that he struck Peterson with his open hand knocking him down. Parties in the cafe who separated the two gave slightly different versions.

The United States Fidelity & Guaranty Company requested, but was refused, a peremptory instruction, on the ground that Taggart was not acting in an official capacity when the assault was made, and that a surety of public officer was not liable for the personal acts of an officer. The refusal of this peremptory instruction is assigned as error.

The rule is well settled in this state that sureties on official bonds are not liable for personal torts of officers. In Lizana et al. v. State, Use of Kelly, 109 Miss. 464, 69 So. 292, it was held that, in the absence of a statute, the sureties on official bonds are not liable for exemplary damages. In Pierce v. Chapman, 165 Miss. 749, 143 So. 845, it was held that an officer acting under color of his office is liable for wrongs committed. The court, in this case, quoted from 22 R. C. L., p. 506, section 190, as follows (page 846): "In a considerable number of cases, the courts have been called on to decide whether a particular act constituted a wrong or misconduct within the terms of an official bond. Broadly speaking an official bond covers torts committed by the officer under color of his official right. But where an individual is injured by the private and personal acts of an officer, and not by acts which he has done either by virtue of his office or under color of his office, his sureties are not liable. For example, if a public officer having no process in his hands does an act which he has no right to do, he is not considered as acting officially and therefore the sureties on his official bond are not answerable for his conduct. But if having a valid process he commits a trespass in seiz-

ing property not subject to the process, those injured by his acts may proceed against him and the sureties on his official bond. . . . In the books there are to be found much refinement and quibbling in behalf of sureties on official bonds, as to whether the act of the officer was done colore officii, or virtue officii. . . . The intricacies of this discussion are satisfactorily avoided by those courts which in accordance with the weight of authority hold that sureties are liable for the acts of an official performed under color of his office as well as for those done by virtue of his office.''

In the case at bar, it is true that the assault would, in all probability, not have occurred if the conversations had not taken place at the time of the arrest. There was no arrest made then, and the interval between the arrest and the assault is not a part of res gestae. We think, therefore, that there was no liability on the part of the United States Fidelity & Guaranty Company, and that its request for a peremptory instruction should have been granted.

The plaintiff, Peterson, was given the following instruction: ''The court instructs the jury for the plaintiff that punitive damages are awarded for the purpose of punishing the defendant for the wrongful act, and setting an example before the community, and as a warning to defendant not to commit similar acts, such damages being allowed if the evidence is sufficient to satisfy the jury that in doing the thing complained of the defendant acted wilfully or with reckless disregard of the consequence of the act.''

An instruction using this language carries with it the idea that if the act complained of was willful or done with reckless disregard of its consequences that punitive damages accrue as a matter of right. The appellee tries to avoid the effect of this instruction by saying that the word ''defendant'' in the singular was aimed only at the officer, and that if aimed at both the officer and the

surety it would be erroneous. We do not think this distinction can be made, because both the officer and his surety were defendants and each is included in the term "defendant." Furthermore, the instruction does not inform the jury that the allowance of punitive damages is not a matter of right, but is discretionary with the jury. In Hale on Damages (2 Ed.), p. 316, it is said that: "It is the province of the court to determine whether there is any evidence to support an award of exemplary damages. It is the province of the jury to determine whether or not such damages should be awarded. It is error to submit the question to the jury, in the absence of any evidence to sustain a verdict for exemplary damages, and it is error to instruct the jury to give exemplary damages, for they rest solely in the discretion of the jury and cannot be claimed as a matter of law. The amount of exemplary damages is limited only by the sound discretion of the jury, but where the verdict is so excessive as to show passion, prejudice or corruption, the court may set it aside." See, also, Southern R. Co. v. Kendrick, 40 Miss. 374, 90 Am. Dec. 332; New Orleans St. L. & Chicago R. Co. v. Burke, 53 Miss. 200, 24 Am. Rep. 689; Illinois Cent. R. Co. v. Cole, 113 Miss. 896, 74 So. 766; Yazoo & M. V. R. Co. v. Williams, 87 Miss. 344, 39 So. 489; Case Note 19 Ann. Cas. 574. In 8 R. C. L., page 592, sec. 136, it is said that: "It is a well-established rule in almost all jurisdictions that exemplary damages are not recovered as matter of right, but that their allowance rests entirely in the discretion of the jury. Such damages, until a vested property right attaches to them through a judgment rendered in a party's favor, are not properly within the protection of constitutions, and may be even denied or affirmatively withheld, by legislative enactment, so far as impairing rights of property are concerned."

The jury should always be told, when punitive or exemplary damages are sought, that it is discretionary

with the jury and not a matter of right, and the jury, in its discretion, may allow or disallow punitive damages. The instruction quoted above violates this rule, and constitutes reversible error both as to Taggart and the surety on his bond.

The judgment of the court below will be reversed and the cause remanded as to Taggart, and will be reversed and rendered as to the United States Fidelity & Guaranty Company.

Reversed and remanded.