642 So.2d 917 (1994)
Kenard WEST
v.
Marvin COMBS.
No. 91-CA-00763.
Supreme Court of Mississippi.
September 8, 1994.
*918 Jim Norris, Parchman, for appellant.
No brief filed for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
PRATHER, Presiding Justice, for the Court:
The Circuit Court of Sunflower County found Kenard West, a correctional officer employed by the Mississippi State Penitentiary at Parchman, individually liable in the amount of $1,500 to Marvin Combs, an inmate, for intentional wrongdoing in the loss of personal property following confiscation of property by prison officials, under prison rules and regulations.
West appeals the order awarding Marvin Combs the amount of $500 in compensatory damages and $1,000 in punitive damages as a result of the loss of six items of personal property.

I.
This lawsuit had its genesis in a "Petition For a Writ of Replevin" filed by Combs against West, Steve Puckett, Associate Warden, and Bobby Butler, a corrections administrator. Combs alleged in his pleading that he was a victim of the wrongful deprivation of personal property when six individual items confiscated on June 29, 1988, by West could not be located by prison officials. The specific relief sought by West in his replevin petition was either the return of his personal property or the sum of $592, which represented the cost of replacement, and $1,000 punitive damages for the wrongful "conversation" [sic] of his property. The claims against Puckett and Butler were dismissed.
West raises four issues on appeal: (1) The circuit court lacked jurisdiction of the subject matter because the action was commenced as a petition for a writ of replevin and the defendant did not have possession of the property; (2) West enjoyed immunity from suit by virtue of the doctrine of sovereign immunity; (3) the court erred in assessing compensatory and punitive damages in an action in rem; and (4) the circuit court erred in failing to adjudicate the issue of whether Combs was entitled to possession of the missing property prior to assessing damages.

II.
The complaint seeks a writ of replevin, but sounds also of trespass and conversion. Combs acknowledged after a question propounded by the circuit judge that he was seeking "replevin for the items listed on Exhibit B."
On June 28, 1988, Combs had been transferred from the Coahoma County Jail to Unit 24 at Parchman where, by virtue of the rules and regulations of the Mississippi Department of Corrections (MDOC), certain items of personal property over allowable limits for "B" Custody Offenders were confiscated by West. According to evidence presented by Combs, two property receipts (Exhibit A list and Exhibit B list, attached) were issued by West. Some articles appear on both lists. Prison officials had no record of the receipt containing the B list.
*919 According to Exhibit A, a receipt purportedly filled out at 1:38 a.m. on June 29, 1988, Officer West confiscated sixteen individual items. West testified all of the items listed in Exhibit A were returned to him and that he was not seeking to recover any of those items.
According to plaintiff's Exhibit B, a receipt purportedly filled out at 1:45 a.m. on June 29, 1988, West also confiscated six other items: one robe, one pair of green Nike tennis shoes, two 20" gold necklaces, and two free world polo shirts. Combs testified these six items were never returned to him after his request. He further testified the value of these items was $37, $67, $447 and $41, respectively. A robe, a pair of tennis shoes, and two (2) free world shirts are listed in both list A and list B. Combs, who proceeded pro se, testified in his own behalf and produced Melvin Williams, another inmate, in support of his claim.
The defendants called three witnesses: Walter Booker, Associate Superintendent; James Dorsey, a correctional officer; and Bobby Butler, a correctional administrator.
Combs identified the missing property and testified as to its value. The day he left Unit 24, authorization was given for Combs to get back some of his property. The items listed on Exhibit A were confiscated by West on June 29, 1988, and returned thirty days later on July 29, 1988. The items listed on Exhibit B were confiscated by West on June 29, 1988, and were neither located nor returned.
Williams testified that all inmates who arrived at Unit 24 that evening from Clarksdale had personal belongings, that all inmates had to surrender those belongings, and that Officer Kenard West signed property receipts for Combs and Williams.
Booker testified that his information indicated that all personal property had been returned to Combs. According to Booker, list B was not in the records of the MDOC, nor did Combs provide him with a copy of that document upon request.
James Dorsey, a watch sergeant, testified he returned Combs' property when Combs left Unit 24. At this time Combs made no complaint to Dorsey that any items were missing. According to Dorsey, Combs was the unit clerk at Unit 24 and had access to inmate property receipts. After property is confiscated from inmates in Unit 24, a copy of the property receipt is placed on file, and the property itself is placed in the property room. Officer West did not possess a key to the property room. Combs did not present the B list to Dorsey upon Combs' receipt of the items found on the A list. Dorsey testified it was "very unusual" to place additional items on the B list when there was space available to place them on the A list.
Bobby Butler, unit administrator of Unit 24, testified that when an inmate arrives at this location, his nonallowable items of personal property are bagged and tagged and stored in the property room. The inmate retains one copy of the property receipt while the other copy is placed on file in the property room. In the case of Combs, there would have been no reason for issuing two separate receipts because there was space available for listing all items on one form. Butler opined that the B list was not properly filled out because the property destruction date was not filled in. Butler did not recall anyone looking for the property itemized on the B list. Combs made no complaint to Butler about any missing items. Upon questioning by Combs, Butler acknowledged that it is possible to misplace property in the property room.
During examination by the court, Combs testified that he remained a week at Unit 24, went to Rankin County where he stayed a week, and then returned to Unit 24 where he was confined another two weeks before being transferred to Unit 29 on or about July 29, 1988. Combs testified he presented the B list to Dorsey who told him he did not know anything about it. Combs said he went on to Unit 29 and filed a "replevin." Combs later agreed to drop the dispute.

III. PROCEDURE WITH REFERENCE TO ISSUE I
In his ruling issued ore tenus from the bench, the circuit judge recognized that the prisoner was proceeding pro se and stated that Combs would not be held to the same *920 standards as an attorney in drafting his complaint. The lower court opined:
And, while [Combs] has entitled this a Petition for Writ of Replevin, the gist of the complaint is that he surrendered property to a correctional officer who failed to return it to him and he seeks to either recover the property or to recover damages for what he claims to be replacement value and he further seeks award of punitive damages for the wrongful conversion of his property.
Combs instituted this action by filing a petition of complaint in replevin. As stated previously, it is apparent from the record that the trial judge granted the award on the basis of a suit in tort for damages as a result of West's conversion of the property.
Combs did not allege in his petition that West had his property, only that West had confiscated it on June 29, 1988. Nor did Combs allege that West wrongfully took his property. This Court has held that a court looks to the content of pleading to determine the nature of the action. Pierce v. Chapman, 165 Miss. 749, 755, 143 So. 845, 847 (1932). Substance is considered over form. Lancaster v. Jordan Auto. Co., 185 Miss. 530, 545, 187 So. 535, 537 (1939); see also Higgins Lumber Co. v. Rosamond, 217 Miss. 1, 6, 63 So.2d 408, 409 (1953). The label is not controlling; therefore, this Court addresses the issues, as the trial court did, on the basis of conversion rather than replevin.

IV. SOVEREIGN IMMUNITY
During final argument, West claimed he was immune from suit by virtue of sovereign immunity. In Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), this Court abolished all judicially-created sovereign immunity of the state and its political subdivisions. Pruett was made prospective, applying only to causes of action accruing on or after July 1, 1984.
Combs' claim arose on June 29, 1989. It is controlled by pre-Pruett case law and the Sovereign Immunity Act codified as Miss. Code Ann. § 11-46-1, et seq., as amended to postpone the effect of Pruett until 1992.
Employees of the Mississippi Department of Corrections, a state agency, enjoy a qualified immunity to a civil action for damages. McFadden v. State, 542 So.2d 871 (Miss. 1989). There is no immunity, however, for a governmental actor who commits an intentional tort. Grantham v. Mississippi Department of Corrections, 522 So.2d 219 (Miss. 1988).
In Reed v. Evans, 342 So.2d 290 (Miss. 1976), cert denied, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 370 (1977), an inmate at the state penitentiary sued the State for reimbursement of the value of personal property taken during a "shakedown" inspection and not returned to him as a result of the State's negligence. There, as here, the articles disappeared while in official custody of penitentiary authorities and could not be found. The State freely admitted that the prisoner had been permanently deprived of his property through the negligence on the part of penitentiary employees who failed to make any provision for its protection from theft or loss. The circuit court directed payment to the prisoner from public funds of $314.66, the undisputed value of the property. We held that a state agency was not liable for the negligence of its agents and that the doctrine of sovereign immunity barred payment of the prisoner's tort claim from public funds.
Combs identifies the defendant West as the correctional officer who, in his official capacity as a security officer, confiscated his property upon Combs' arrival at the state penitentiary. When Combs finally complained that the items were missing, the property officer could not return the articles to Combs.
The lower court found the evidence sufficient to hold that West intentionally took Combs' property, in the following:
The situation here is that I am persuaded by the evidence that the man had the property that he says he had; that he surrendered it to the defendant, West, and that it has not been returned to him. I am also persuaded by the evidence that these officers have made reasonable search of the property room and have not been able to locate it. That being the case, I am going to enter a judgment against the defendant, *921 Kenard West, in the amount of $500 plus the $1,000 punitive damages because while he was acting within the scope of his employment when he received the property, it is obvious to me  there, of course, are two explanations for the two property receipts. One explanation is the suggestion that Counsel has made which is that Combs created this or forged it or whatever and created this case out of whole cloth but the facts don't support that theory because he made a complaint for administrative relief in September before he ever had access as a clerk to these documents and, in his request for administrative relief, he claimed the same property that is listed here. So, that refutes the suggestion and that is all that it is, that this is a forgery. The signatures of West and Combs appear to be the same but I am no handwriting expert. Of course, the other inference that can be drawn is that when West received the man's property initially, he never intended to return this property to him; that he filled out a separate sheet and never filed it and hoped to get away with it. And, I think that is exactly what happened. And, for those reasons, I am going to enter a judgment in favor of the Plaintiff against West for $500 and $1,000 in punitive damages. I will prepare the Order myself and I will furnish Mr. Combs and defense Counsel copies.
Combs was granted judgment for actual damages to recover the value of the personal property at the time of the loss under a theory of conversion, an intentional tort. The measure of damages for conversion of personal property is the value of the property at the time and place of its conversion. Paccar Financial Corp. v. Howard, 615 So.2d 583 (Miss. 1993). Punitive or exemplary damages may even be awarded for the conversion of another's property if there is evidence of acts which are willful, wrong, malicious, or oppressive. Phillips Distributors Inc. v. Texaco, Inc., 190 So.2d 840 (Miss. 1966). As the proof supports the circuit judge's finding for actual damages, the award of actual damages is affirmed.
However, this Court is compelled to reverse the award of $1,000 punitive damages. In Snow Lake Shore Property Owners Corporation v. Smith, 610 So.2d 357, 362 (Miss. 1992), we noted that "since punitive damages are assessed as an example and warning to others, `they should be allowed only with caution and within narrow limits.'" We further opined:
The usual case for punitive damages involves either "gross negligence resulting in personal injuries or .. . some flagrant act by a wrongdoer which amount[s] to willful, malicious, or wanton conduct." [citations omitted] Neither situation exists here.
We do not think the proof in this case supports an award of punitive damages. Combs neither alleged nor proved that West took and intentionally converted the missing items to his own individual use. Rather, the proof shows that West, as a correctional officer acting within the scope of his employment, confiscated articles that were over the allowable limits and issued receipts for the items.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.