**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-60768

_____

ELNORA CHANEY WATSON

Plaintiff-Appellee,

versus

JOHNSON MOBILE HOMES; ET AL

Defendants,

JOHNSON MOBILE HOMES;
WILLIAM P. JOHNSON

Defendants-Appellants.

_____

Appeal From the United States District Court
For the Southern District of Mississippi

_____

February 27, 2002

Before JOLLY and PARKER, Circuit Judges, and MILLS,[*] District
Judge.

ROBERT M. PARKER, Circuit Judge:

Defendants-Appellants Johnson Mobile Homes and William P.

Johnson ("Defendants") appeal the district court's refusing to

set aside the jury's award of punitive damages as not supported

by the evidence or to remit as constitutionally excessive.  They

_____

[*] District Judge of the Central District of Illinois, sitting
by designation.

also argue that Plaintiffs' claim for intentional breach of contract against Johnson must fail as a matter of law. We conclude that the evidence in this case supports the jury's awarding punitive damages, but we agree that the amount awarded is constitutionally excessive. We therefore reverse in part the district court's denial of Defendants' motion for judgment as a matter of law and remit the jury's punitive damages award. In all other respects, we affirm.

## BACKGROUND

This case arises from Elnora Watson's aborted purchase of a mobile home from Johnson Mobile Homes, a Mississippi company with its principal place of business there. Watson, a resident of Alabama, appeared on Defendants' lot in Meridian, Mississippi, and agreed to buy a mobile home for $22,995, to be financed over a number of years. The purchase required a credit application and a deposit of $4,000. Under the terms of the written purchase agreement, if the financing company refused Watson's application she was entitled to the immediate return of her deposit. If she was approved yet did not go through with the purchase, however, she would forfeit the $4,000. Watson's daughter, Michelle, cosigned the application and provided the deposit.

Several days later, Watson learned that her application had been rejected. About the same time, Johnson Mobile Homes' salesman Daniel Johnson called Michelle to see if she would be

willing to pay another $3,000. This concession, along with several others, was necessary to meet the financing company's requirements in light of Watson's poor credit history. After considering the new deal for two days, Watson and Michelle went to Defendants' lot to get their deposit back. The company refused to return it. A few days later, Watson's son tried to secure return of the deposit, but he too was unsuccessful. A third attempt was made, this time by Michelle with Watson's daughter-in-law. At the lot, Michelle confronted Bill Johnson, co-owner of Johnson Mobile Homes, who refused to return the deposit, telling Michelle "to go get herself a lawyer."

Watson filed suit in Alabama state court, naming Johnson Mobile Homes, Johnson Mobile Homes of Alabama, Inc., and Bill and Daniel Johnson as defendants. The suit was removed to federal district court, the Alabama company having been dismissed, and was thereafter transferred to the Southern District of Mississippi. The case proceeded to trial, during which the jury heard evidence of 45 other applicants whose deposits were also forfeited. At the end of evidence, the jury was charged on three theories of recovery: intentional breach of contract, fraud, and conversion. The jury found Bill Johnson and Johnson Mobile Homes liable on each theory, but found Daniel Johnson not responsible. Watson was awarded $4,000 in actual damages and $700,000 in punitive damages. Defendants' subsequent motion for judgment as a matter of law or new trial and for remittitur was denied.

On appeal, Defendants argue that the evidence is insufficient to sustain an award of punitive damages and further that the amount awarded cannot withstand constitutional scrutiny. Defendants also argue that the district court's submission of a general verdict form may have permitted the jury to find Bill Johnson responsible for intentional breach of contract, a finding that cannot be sustained because Johnson was not himself a party to the purchase agreement.

## DISCUSSION

## I.

When reviewing a district court's refusal to set aside an award of punitive damages, we will reverse only upon determining that "no legally sufficient evidentiary basis" exists for making such an award, the same standard applied by the district court in the first instance. *See* FED. R. CIV. P. 51(a)(1); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 218-19 (5th Cir. 2001). Under Mississippi law, punitive damages may be had for each of the three theories of recovery submitted in this case. To sustain an award of punitive damages for intentional breach of contract, "the plaintiff must prove by a preponderance of the evidence that the defendant acted with (1) malice or (2) gross negligence or reckless disregard for the rights of others." *See Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 447 (Miss. 2000). Meeting this burden requires proof of "an intentional wrong, insult, or abuse" or "such gross negligence as

-4-

constitutes an independent tort." *See id.* "[O]rdinary torts, the product of forgetfulness, oversight, or the like, do not rise to the heightened level of an independent tort." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1187 (Miss. 1990)(internal quotations omitted). Conversion and fraud, Watson's other theories of recovery, are independent torts. *See West v. Combs*, 642 So. 2d 917, 921 (Miss. 1994)(conversion); *Andrew Jackson*, 566 So. 2d at 1187 (fraud). Thus, Watson's proving Defendants' perpetrated conversion or fraud will also establish an independent tort, which in turn is needed to sustain an award of punitive damages for breach of contract.

Showing fraud or conversion will not by itself secure an award of punitive damages, however. Not all independent torts are committed with malice, gross negligence, or reckless disregard for the rights of others.[1] This precept goes with the rule that punitive damages are disfavored under Mississippi law and are reserved for extreme cases and even then should be narrowly applied. *See Tideway Oil*, 431 So. 2d at 460 n.1. Thus, the propriety of awarding punitive damages in this case depends on our concluding that there is a sufficient evidentiary basis to

---

[1]  *See Boling v. A-1 Detective & Patrol Serv., Inc.*, 659 So. 2d 586, 589 (Miss. 1995)("Though fraud is frequently an ingredient of an award of punitive damages, it is clear from our cases that more is required.")(internal quotations omitted); *West*, 642 So. 2d at 921 (concluding that the evidence was sufficient to support finding that defendant was responsible for conversion but not that his conduct warranted punitive damages).

-5-

find that Defendants (1) committed an independent tort and (2) in so doing perpetrated conduct that shows malice, gross negligence, or recklessness. Because Defendants do not challenge the jury's finding each responsible for fraud and conversion, we look only for evidence of the latter element.

The jury heard that compared to the 45 other applicants who forfeited their deposits during a seven-year period, Watson's was excessive. With the exception of one other amounting to $3,100, Watson's deposit was eight times the next highest ($500) and over 25 times the average ($154). Further, and remembering that what she paid was essentially an application fee, not a down payment, the amount was 17 percent of the mobile home's purchase price. Watson claims that requiring such an amount just to make an application is indefensible; she alleges that not returning the payment immediately after the application was refused is gross misconduct. Defendants attempt to justify their actions by arguing that the finance company had made an "initial conditional acceptance" of her application, and that therefore Watson was not entitled to the return of her deposit. Defendants leave out that the conditions of the acceptance included Watson's paying an additional $3,000, making more payments at a higher interest rate, and agreeing to an arbitration provision. These terms are hardly "more favorable" to Watson, as Defendants contend. Defendants' also tried to tie Watson to a third deal, offering her a $4,000 "credit" toward the purchase of a different, less

expensive mobile home.  Never once did Defendants offer to return Watson's deposit, despite Watson's and her family's several requests.  Viewing this evidence, we conclude that it readily provides a legally sufficient basis for upholding the jury's awarding punitive damages in this case.

## II.

We review de novo a challenge to the constitutionality of the size of a punitive damages award.  *See Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 121 S. Ct. 1678, 1683 (2001).  The imposition of punitive damages under state law is constrained by the Eighth and Fourteenth Amendments, the first proscribing excessive fines and cruel and unusual punishment, the second making grossly excessive punishments unlawful under its Due Process Clause.  *See id.* at 1684.  In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575-86 (1996), the Supreme Court articulated three factors that courts should consider in determining whether an award of punitive damages is constitutionally excessive.  They are "the defendant's reprehensibility or culpability; the relationship between the penalty and the harm to the victim caused by the defendant's actions; and the sanctions imposed in other cases for comparable misconduct."  *Cooper*, 121 S. Ct. at 1684-85 (citations omitted).  We consider each factor in turn.

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of

the defendant's conduct." *BMW*, 517 U.S. at 575. Reprehensibility depends on the nature of the conduct itself and the context in which it occurred. Reprehensibility does not ask whether Defendants' conduct warrants punishment; we have already determined that there is sufficient evidence to conclude that it does. Instead, the first *BMW* factor is concerned with where Defendants' conduct fits on a scale of outrageousness. Conduct involving violence or threats of violence is obviously more shocking than that which causes only economic harm. *See id.* at 575-76. Similarly, trickery and deceit are more deserving of sanction than mere negligence. *See id.* at 576. And a wrong that is part of larger pattern of misconduct is more blameworthy than a single, isolated malfeasance. *See id.* 576-77. We are also mindful that taking advantage of someone who is relatively unsophisticated or financially vulnerable is particularly deserving of rebuke. *See id.* at 576.

As we discussed above, there is substantial evidence to support an award of punitive damages in this case. Preying on the relatively unsophisticated, charging an exorbitant deposit, refusing to return the deposit once the application was rejected, using the $4,000 to wrest a better deal--each is an example of the sort of conduct that supports a punitive damages award. At the same time, however, we see evidence that somewhat mitigates Defendants' blameworthiness. First, we cannot conclude that the

-8-

practice of requiring a reasonable, nonrefundable application fee for purposes of processing a loan application is untenable. Second, we see no evidence that Defendants required other deposits approaching the amount paid by Watson in this case. Third, the jury heard that the vast majority of applicants, numbering over two thousand, either went through with the purchase or were returned their deposits upon refusal by the financing company. We also note that there was no evidence of physical abuse or emotional suffering, Watson's damages having arisen solely as the result of economic injury.

The second *BMW* factor looks at the ratio between punitive damages and actual or potential harm to plaintiff. 517 U.S. at 580. There is no particular disparity between punitive and actual damages that will automatically result in our declaring a punitive damages award unconstitutional. *See id.* at 582-83. Nevertheless, comparing punitive damages with actual harm gives us an idea whether the size of the award is suspect. *See id.* at 583. Here, the ratio between actual damages ($4,000) and punitive damages ($700,000) is 175:1, a disparity not near the 500:1 figure in *BMW* called "breathtaking," but very great nonetheless. Plaintiff asks that we mitigate the difference by including the potential harm to each of the 46 applicants whose deposits were forfeited. *BMW* suggests that a court should aggregate the actual and threatened harm suffered not only by the

plaintiff but also by individuals similarly situated. *See id.* at 582. As we said before, however, we cannot conclude that charging a nonrefundable application fee is unlawful or otherwise improper. But even if we did include the amounts forfeited by the 45 other applicants in our calculus, their smallness would fail to substantially lessen the disparity between actual and punitive damages. The ratio in that case would be approximately 50:1.

We last consider the penalties provided under state law for comparable misconduct, the third *BMW* factor. Of particular relevance here are state statutes punishing perpetrators for conduct similar to Defendants', for the Supreme Court has directed that we "accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *BMW*, 517 U.S. at 583 (internal quotations omitted). Mississippi's Consumer Protection Act, which proscribes a host of deceptive trade practices, *see* MISS. CODE ANN. § 75-24-5(2)(a)-(*l*)(1972 & Supp. 2001), imposes a civil penalty of up to $10,000 for each violation, *id.* § 75-24-19(1)(b). The Act also provides that its violation is a misdemeanor for first-time offenders, who are subject to $1,000 fine, and a felony for third-time and subsequent offenders, who are subject to a fine between $1,000 and $5,000 and between one and five years' imprisonment. *Id.* § 75-24-20. We view these provisions as imposing relatively severe

penalties on those who take unfair advantage of consumers.[2]  At the same time, we note that the penalty for single-incident offenders is small compared to the sanction imposed against Defendants in this case.  In *BMW*, the Court found that Alabama's consumer protection law did not give adequate notice that a single offense of fraud might subject defendant to a multimillion dollar penalty.  516 U.S. at 584.  Likewise, we conclude that in this case Mississippi's statute could not have made Defendants aware that their acts of fraud, conversion, and intentional breach of contract would result a penalty amounting to 175 times actual damages.

Viewing the record against the yardsticks articulated in *BMW*, we conclude that the size of punitive damages award in this case makes it constitutionally infirm.  Again, the wrongfulness of Defendants' conduct cannot be gainsaid.  But we do not see a pattern of malfeasance on their part, nor did Defendants act in such a way that Watson's health and safety were put at risk.  We therefore conclude that remittitur is required.  *See Rubinstein*

---

   [2] *Cf*. LA. REV. STAT. ANN. (1987 & Supp. 2002) § 51:1401, *et seq.* (Louisiana's Unfair Trade Practices and Consumer Protection Law); *id.* § 51:1409(A)("If the court finds the unfair or deceptive method, act or practice was knowingly used . . . the court shall award three times the actual damages sustained); TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.* (1987 & Supp. 2002)(Texas's Deceptive Trade Practices-Consumer Protection Act); *id.* § 14.50(b)(1)(permitting a maximum award of three times economic damages upon a finding that defendant's conduct was committed intentionally).  Neither the Louisiana nor the Texas law provides for criminal penalties.

*v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392, 409 (5th Cir. 2000)(ordering remittitur). We remit punitive damages to $150,000, concluding that this amount is the maximum we could sustain in this case. *See Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991). It is an amount, though still very high, that honors both the jury's well-supported findings regarding Defendants' conduct and the constitutional standards articulated in *Cooper* and *BMW*.

### III.

A general verdict form, while not favored, will not result in reversible error so long as there was sufficient evidence to support each theory of recovery put to the jury. *See Nowell v. Universal Elec. Co.*, 792 F.2d 1310, 1312 (5th Cir. 1986). Johnson argues that of the three theories submitted to the jury, on only two could he have been found liable--fraud and conversion. On the third claim--intentional breach of contract-- Johnson contends that he cannot because he was acting as an agent for Johnson Mobile Homes and was not himself a party to the contract. To begin with, Johnson never objected to the district court's submission of a general verdict form; indeed, in his own proposed jury instructions he submitted such a form. Nor did Johnson object to the Court's charging the jury on his liability for intentional breach of contract. His failure to object means that we must sustain the jury's verdict unless plain error is

-12-

evident. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 932 (5th Cir. 1999).

In a breach of contract action, under Mississippi law, "agents for a disclosed principal [] incur no individual liability, absent fraud or other equivalent conduct." *See Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989). Here there was evidence of fraud, so Johnson could have been found individually responsible. We therefore see no plain error in the district court's charging the jury on all three theories of recovery.

## CONCLUSION

For the foregoing reasons, we REVERSE IN PART the district court's denial of Defendants' motion for judgment as a matter of law and REMIT punitive damages to $150,000. At her option, Watson may refuse to accept the damages as remitted and instead have that issue tried anew. If she so chooses, we REMAND to the district court for new trial on the issue of punitive damages. In all other respects the judgment of the district court is AFFIRMED.