**Tiffany A. HALEY Plaintiff**

v.

**Cynthia ELLIS; Elma, Inc.; and Rebelwood Apartments, Ltd. Defendants**

**No. CIV.A. 3:02–CV–320WS.**

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 20, 2005.

---

[3]. The John Doe defendant since never named by plaintiff is viewed by this court as a fictitious defendant.

John A. Foxworth, Jr., Foxworth & Casano, P.A., Michael J. Casano, Foxworth & Casano, P.A., Gulfport, MS, Patrick Cash Malouf, Porter & Malouf, Timothy W. Porter, Porter & Malouf, Jackson, MS, for Tiffany A. Haley, Plaintiff.

Dudley Collier Graham, Jr., Wise, Carter, Child & Caraway, Jeremy L. Birdsall, Wise, Carter, Child & Caraway, Robert Mark Hodges, Wise, Carter, Child & Caraway, Trent L. Walker, Ungarino & Eckert, LLC, Jackson, MS, for Cynthia Ellis, Patricia Murray, Beverly Jeuitt, Elma, Inc., Rebelwood Apartments, Ltd, Connecticut Specialty Insurance Group Axis Specialty Insurance Company, Defendants.

### ORDER GRANTING SUMMARY JUDGMENT

WINGATE, Chief Judge.

Before this court is defendants' motion for summary judgment [**docket # 41–1**] and its attachments [**docket # 47–1**]. The defendants herein are Cynthia Ellis; Elma, Inc.; and Rebelwood Apartments, Ltd. The plaintiff is Tiffany A. Haley who submits this lawsuit on behalf of her minor son, Ze'Kendrick White, and herself. In her complaint, plaintiff charges that the defendants are liable because they are responsible for the lead poisoning suffered by her minor child. The defendants have submitted their motion for summary judgment pursuant to Rule 56(b) and (c), Federal Rules of Civil Procedure.[1] Plaintiff opposes the motion. For the reasons explained below, this court grants defendants' motion for summary judgment.

### Pertinent Facts and Procedural History

Plaintiff, Tiffany Haley ("Haley"), contends that her son, Ze'Kendrick White ("White"), was diagnosed with an elevated lead level in March of 1999. At the time of this alleged diagnosis, plaintiff and her son were residing at the Rebelwood Apartments ("Rebelwood"), a complex that was federally subsidized by the Department of Housing and Urban Development ("HUD"), constructed in 1980. Haley and White moved to Rebelwood in March of 1998, from White's grandmother's home where they had been residing since 1996. After the diagnosis on her son, Haley notified Rebelwood that there might be lead paint on the premises, namely the swing set, hand railing and fire hydrant.

Shortly thereafter, G. Keith Maranger ("Maranger") of the Mississippi Health Department conducted lead tests at three places where the child had resided and/or

---

1. Rule 56(b) and (c), Federal Rules of Civil Procedure provides:

    (b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

    (c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

spent time. One of these places was Rebelwood.

Maranger recorded the following readings by way of an X–Ray Fluorescence Spectrum Analyzer ("XRF") machine: 1.00, 1.26, 1.44, 1.49, 1.60, and 1.92 milligrams of lead per square centimeter. These levels supposedly indicated a presence of lead in the complex.

Maranger next tested the water at Rebelwood, as well as the dust and soil. His readings on the water, dust and soil were negative. Maranger then tested the living room floor and porch floor. The readings from these places were positive.

Defendants dispute that any of Maranger's findings exposed them to any liability, although lead may have been detected in White's blood stream. First of all, defendants point out that in 1971, Congress mandated that the Secretary of Housing and Urban Development prohibit the use of lead-based paint in federally subsidized housing.[2] In 1977, The Consumer Products Safety Commission banned for consumer use paint containing amounts of lead in excess of 0.06% of the weight of the total nonvolatile content of the paint, or the weight of the dried paint film.[3] Defendants urge the court to note that Rebel-

wood was built after the ban on lead paint issued in 1977.

Next, relative to Maranger's investigation, the defendants argue that it is common for an XRF machine to give a false positive reading where the painted surface tested was curved and the underlying substrates (or materials) are metal. Defendants contend that these were the conditions present at the time of the taking of Maranger's readings.

Next, although Maranger obtained positive readings for lead on the living room floor and porch floor, defendants argue lead dust can come from lead sources that are present naturally in the environment and do not necessarily come from the specific area tested.

Finally, defendants contend that Haley's prior two residences tested positive for the presence of lead. This revelation, combined with the absence of lead at Rebelwood, say defendants, shows that the defendants herein, all of whom are connected only to Rebelwood, have no liability to the plaintiff herein.

On February 14, 2002, Haley filed her complaint in Hinds County Circuit Court, alleging breach of the implied warranties

---

**2.** Title 42 U.S.C. § 4831(b) provides:

(b) Prohibition by Secretary of Housing and Urban Development of use in residential structures constructed or rehabilitated by Federal government or with Federal assistance. The Secretary of Housing and Urban Development shall take steps and impose such conditions as may be necessary or appropriate to prohibit the use of lead-based paint in residential structures constructed or rehabilitated by the Federal Government, or with Federal assistance in any form after the date of enactment of this Act [enacted June 23, 1976].

**3.** 16 C.F.R. § 1303.1(a) provides in pertinent part:

(a) In this part 1303, the Consumer Product Safety Commission declares that paint

and similar surface-coating materials for consumer use that contain lead or lead compounds and in which the lead content (calculated as lead metal) is in excess of 0.06 percent of the weight of the total nonvolatile content of the paint or the weight of the dried paint film (which paint and similar surface-coating materials are referred to hereafter as "lead-containing paint") are banned hazardous products under sections 8 and 9 of the Consumer Product Safety Act (CPSA), 15 U.S.C.2057, 2058. (See parts 1145.1 and 1145.2 for the Commission's finding under section 30(d) of the Consumer Product Safety Act (CPSA) that it is in the public interest to regulate lead-containing paint and certain consumer products bearing such paint under the CPSA.)

of habitability, breach of contract, and negligence. Defendants filed their motion for summary judgment on December 22, 2004.

### Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); rather, "it is the province of the jury to access the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issues of material facts exist." *Id.* Summary judgment is improper where the court merely believes it is unlikely that the non-moving party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962). Facts that are irrelevant or unnecessary to a decision are "non-material" and do not prevent summary judgment. *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505; *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987).

Summary judgment is mandated in any case where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(c) further requires that the court enter summary judgment if the evidence favoring the non-moving party is not sufficient for the trier of fact to enter a verdict in the non-moving party's favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1297 (5th Cir.1993).

When the moving party has challenged the non-movant's case under Rule 56(c), the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In response to a motion for summary judgment, the non-moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim or claims asserted. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122–23 (5th Cir.1988). The court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant. *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir.1982).

### Law and Application

In the case, *sub judice*, defendants contend there is no dispute of material fact which would give rise to the causes of action stated in Haley's complaint, namely, breach of the implied warranty of habitability, breach of contract and negligence.

This court has subject matter jurisdiction over this matter under diversity of citizenship, Title 28 U.S.C. § 1332.[4] Accordingly, this court looks to state law for the elements of plaintiff's state law claims.

---

4. Title 28 U.S.C. § 1332 provides in pertinent part: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States ..."

*Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*Elements of Breach of Implied Warranty of Habitability*

■ Plaintiff claims the defendants breached the implied warranty of habitability a landlord owes a tenant because of the alleged use of lead-based paint on the premises. Defendants claim they did not breach the implied warranty because they did not use lead-based paint at Rebelwood. "The implied warranty of habitability requires the landlord to provide reasonably safe premises at the inception of a lease, and to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant, unless expressly waived by the tenant." *Sample v. Haga*, 824 So.2d 627, 631 (Miss.App. 2001) (quoting *Sweatt v. Murphy*, 733 So.2d 207, 210 (Miss.1999)). "Additionally, the implied warranty allows recovery not only under contract law but also tort law. The implied warranty of habitability provides that the landlord has a duty to use reasonable care in providing safe premises." *Id.* (citing *Joiner v. Haley*, 777 So.2d 50, 52 (Miss.App.2001)).

*Elements of Breach of Contract*

■ Next, plaintiff alleges that defendants Rebelwood and Ellis breached the 1999 Lease Agreement by allowing lead-based paint on the premises. "In a breach of contract action, under Mississippi law, 'agents for a disclosed principal ... incur no individual liability, absent fraud or other equivalent conduct.'" *Watson v. Johnson Mobile Homes*, 284 F.3d 568, 574 (5th Cir.2002) (quoting *Gray v. Edgewater Landing, Inc.*, 541 So.2d 1044, 1047 (Miss. 1989)). Defendants argue defendant Ellis is an agent of defendant Rebelwood and,

as such, is only liable for fraud in connection with the Lease Agreement. Regarding Rebelwood's contract duties, the 1999 and 1998 Lease Agreements provided that Rebelwood promised to "(1) maintain all common areas in a safe condition and (2) maintain all equipment and appliances in safe and working order." Defs.' Summ. J. Mot. at 13.

*Elements of Negligence*

■ Finally, plaintiff claims the defendants were negligent in allegedly using lead-based paint at Rebelwood. A landlord owes a tenant a duty of reasonable care to keep the common areas on the premises of the leased property safe. *Lucas v. Miss. Hous. Auth. No. 8*, 441 So.2d 101, 103 (Miss.1983) (citing *Turnipseed v. McGee*, 236 Miss. 159, 109 So.2d 551, 554 (1959)). If a landlord breaches this duty, the landlord is liable in tort for negligence. *Id.* To prove liability on the part of a landlord, a tenant must show that the landlord had "actual or constructive notice of the defect or condition and a sufficient opportunity to repair the same." *Mongeon v. A & V. Enter., Inc.*, 733 So.2d 170, 171 (Miss.1997).

Defendants assert Rebelwood had no notice, actual or constructive, of lead-based paint on the premises and, as such, Rebelwood breached no duty owed to plaintiff. Further, defendants argue, because of the ban on lead-based paint issued before the construction of Rebelwood, Rebelwood was justified in assuming it was free of lead-based paint pursuant to federal regulation exempting structures built after 1978 from lead-based paint regulation.[5]

*Plaintiff's Failure to Show Injury*

All three of plaintiff's causes of action, breach of implied warrant of habitability,

---

**5.** 24 C.F.R. § 35.115(a)(1) provides: "A residential property for which construction was completed on or after January 1, 1978, or, in the case of jurisdictions which banned the sale or residential use of lead-containing paint prior to 1978, an earlier date as HUD may designate (see § 35.160)."

breach of contract, and negligence, require plaintiff to prove harm and proximate causation. Defendants contend in their summary judgment papers that plaintiff cannot establish that lead-based paint is the proximate cause of any lead-related injury suffered by her son. Plaintiff, say defendants, has failed to establish the existence of any lead-based injury to her son.

In response to defendants' motion for summary judgment, plaintiff argued that she could provide expert reports of Dr. Howard T. Katz, M.D., and Roy W. Dowling, Ph.D, showing that her son had sustained a lead-based injury. She has failed to do so. Further, in an order dated December 16, 2004, this court ordered plaintiff to provide said expert reports by 5:00 o'clock p.m. on the same date. Plaintiff has not submitted the alleged reports.

Meanwhile, in their summary judgment papers, defendants provided expert testimony to the contrary. Dr. Joe Donaldson opined the following in his expert report:

> Based upon all the documentary evidence I have reviewed, it is my opinion to a reasonable degree of medical probability that Ze'Kendrick White does not now have a lead related condition or injury, nor did he have any lead related condition or injury in 1999 and 2000 nor at any other time. Furthermore, based on all the documentary evidence I have reviewed, I am also of the opinion to a reasonable degree of medical probability that Ze' Kendrick White will not have any lead related condition or injury in the future arising out of any alleged prior lead exposure.

Defs.' Mem. in Supp. of Defs.' Summ. J. Mot. at 12.

■ Because plaintiff has failed to provide any expert or medical reports tending to show any lead-related injury sustained by her son, and because this court has received cogent testimony to the contrary from defendants, this court necessarily finds that this lawsuit features no question of material fact whether Ze'Kendrick White was injured by lead-based paint. This finding is fatal to all of the plaintiff's causes of action.

### Conclusion

This court finds that this lawsuit features no question of material fact on whether plaintiff's son suffers from a lead-based injury from paint. Although plaintiff's complaint alleges such, plaintiff has failed to support the allegations of her complaint with evidence. Plaintiff has the burden to do so. Defendants, on the other hand, have submitted proof showing the absence of a lead-based injury. As such, this court is persuaded to grant summary judgment to defendants on all of plaintiff's claims, breach of the implied warranty of habitability, breach of contract, and negligence. All other pending motions are, hereby, rendered moot.

The court will enter a separate Final Judgment in accordance with the local rules.