# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00446-COA

ROBERT LANG AND BEVERLY LANG          APPELLANTS

v.

TERESA BEASLEY          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2012 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | EDUARDO ALBERTO FLECHAS |
| | RONALD EARL STUTZMAN JR. |
| ATTORNEYS FOR APPELLEE: | JIM WAIDE |
| | WAYNE DOWDY |
| | RON L. WOODRUFF |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | APPELLEE AWARDED COMPENSATORY AND PUNITIVE DAMAGES |
| DISPOSITION: | AFFIRMED: 09/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, P. J., MAXWELL AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Teresa Beasley rented space to work as a manicurist at a salon owned by Robert and Beverly Lang.  Beasley sued the Langs, alleging that they converted her property and that Robert Lang ("Lang") had sexually assaulted her.  Lang largely refused to participate in the litigation, claiming he was never served with process.  He was sanctioned repeatedly for this strategy and ultimately had a default judgment entered against him, though Beverly Lang did put on a defense.  Beasley was awarded a total of $138,000 in compensatory damages and

$245,000 in punitive damages.  The Langs appeal, and we affirm.

**FACTS**

¶2.    In 2006, Beasley began operating inside the Langs' salon, the Suntan Depot.  Around this time she moved from a house to a smaller apartment, and the Langs allowed Beasley to store some personal items in another building they owned.

¶3.    According to Beasley, Robert Lang began showing an interest in her that made her uncomfortable.  He asked her personal questions, tried to give her money, and, at one point, bought her a bikini.  Sometime later, Beasley testified, the Langs had her take a key from an employee of their salon who had been fired for claiming that Lang had been peeping on people in the salon.  Beasley took the key and offered to return it to Beverly Lang, but she declined.  Robert Lang then called Beasley and told her he was going to come to her apartment to get the key.

¶4.    Beasley let Lang into her apartment.  He followed her into her bedroom, and, when she turned her back to him, Lang pulled Beasley's skirt over her head.  He then grabbed her "buns" and tried to push her onto the bed.  Beasley resisted, got Lang out of the bedroom, then locked herself inside.  Lang became apologetic and left.

¶5.    Because of this incident, Beasley could not continue working at the Langs' salon.  She testified that she was only able to get a few of her business supplies from the salon and that the Langs refused to let her get her household items from storage.

¶6.    The Langs contended that Beasley's daughter came in shortly after Beasley quit and picked up most of Beasley's business items.  Beverly Lang testified that Beasley's only

2

remaining business items were concrete plant stands, which Beasley had refused to come get. Beverly also testified that Beasley was offered several opportunities to get her personal items. The Langs' theory of the case was that Beasley was a "gold digger" who was upset when Robert Lang spurned her advances.

¶7. Ultimately Beasley was awarded $103,000 in compensatory damages against Robert Lang and $35,000 in damages for conversion for which the Langs were jointly and severally liable. The jury also awarded punitive damages in the amount of $200,000 against Robert and $45,000 against Beverly. The Langs appeal from that judgment.

## DISCUSSION

### 1. Sufficiency of the Evidence - Compensatory Damages

¶8. The Langs challenge the sufficiency of the evidence supporting the jury's award of damages for conversion. The standard of review for the denial of a motion for [judgment notwithstanding the verdict] is de novo. *Brothers v. Winstead*, 129 So. 3d 906, 914 (¶17) (Miss. 2014). "A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict." *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 948 (¶25) (Miss. 2008). "Substantial evidence is information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions." *Brothers*, 129 So. 3d at 915 (¶18) (citations omitted).

¶9. The Langs first contend that Beasley did not put on any evidence of ownership. "[O]wnership is an essential element of conversion." *Cmty. Bank, Ellisville, Miss. v.*

3

*Courtney*, 884 So. 2d 767, 772 (¶10) (Miss. 2004). At trial, Beasley provided itemized lists of personal and business property she claimed had been converted by the Langs. She testified that the items on the list were hers. The Langs did not seriously contest ownership; Beverly Lang testified that Beasley's personal items were not at the storage unit and that her business items had been picked up by her daughter. We conclude that Beasley's testimony was sufficient to support the ownership element of conversion.

¶10.    The Langs also contend that Beasley did not put on sufficient evidence of the value of the converted property. "[A] party may testify as to the value of his or her own property." *Courtney*, 884 So. 2d at 774 (¶23). The Mississippi Supreme Court has "not indicated whether this estimate of value must be rationally based. Nor [has it] required any predicate other than that of ownership." *Regency Nissan Inc. v. Jenkins*, 678 So. 2d 95, 101 (Miss. 1995). "As to whether the owner's opinion is accurate, that is a matter for cross-examination and goes merely to the weight and not to admissibility." *Meredith v. Hardy*, 554 F.2d 764, 765 (5th Cir. 1977).

¶11.    In a conversion case, the measure of damages is the value of the property at the time and place of the conversion. *West v. Combs*, 642 So. 2d 917, 921 (Miss. 1994). Beasley testified at trial as to the amount she paid for her personal and business items, as well as her opinion of the fair market value of the items when the items were converted. Beasley also provided the same information in itemized lists, and she was cross-examined concerning her valuations. She noted in her testimony that the only receipts she might have possessed would have been with the items that the Langs converted. Under Mississippi law, Beasley's

4

testimony, subject to cross-examination, was sufficient evidence of the fair market value of the converted property.

### 2. Punitive Damages

¶12. The Langs present three distinct challenges to the awards of punitive damages against them. We shall address them in a more logical order than presented.

¶13. First, the Langs contend that the trial court erred in sanctioning Beverly Lang for a discovery violation by disallowing her from testifying to her net worth. They argue that Beasley withdrew her motion to compel the discovery and thus that the motion to compel was abandoned. But even if we accept that argument, the Langs fail to complete it; they make no effort to show that the motion to compel had to be granted in order to sustain the trial court's sanction. Failure to completely brief this argument amounts to a waiver. *See Jefferson v. State*, 138 So. 3d 263, 265 (¶8) (Miss. Ct. App. 2014).

¶14. Next, the Langs contend that the trial court erred by not conducting a separate evidentiary hearing on punitive damages. *See* Miss. Code Ann. § 11-1-65(1)(c)-(d) (Supp. 2013). However, the record reflects that the trial court offered both parties the opportunity to present evidence. Beasley rested on the record already established. The Langs also declined to present evidence, after the trial court reiterated its decision to sanction them by limiting what they would be permitted to offer. Thus the record reflects that the Langs had no further evidence to present, not that the trial court denied them the hearing.

¶15. Finally, the Langs argue that the trial court erred in sustaining the punitive damages award since it was, allegedly, far in excess of the amount statutorily permitted based on their

5

net worths. *See* § 11-1-65(3)(a). The Langs point to Beverly Lang's deposition testimony (taken years before trial) regarding her assets at that time, but the deposition testimony was not in evidence at trial. Moreover, "[p]roof of net worth of a defendant, while admissible, is not a prerequisite to an award of punitive damages." *C&C Trucking Co. v. Smith*, 612 So. 2d 1092, 1105 (Miss. 1992) (citation omitted). This argument is without merit.

### 3. "Sexual Assault and Battery"

¶16. Prior to trial, the Langs moved to preclude Beasley's attorney from using the phrase "sexual assault and battery" to describe what Robert Lang did to Beasley in her apartment. According to the Langs, this was prejudicial since it implied Lang had been convicted of a crime in the incident (which he had not). Beasley argued that it was merely descriptive of what had occurred – i.e., "sexual . . . assault and battery," not "sexual assault . . . and battery." The Langs' attorney suggested that Robert Lang's actions should be called "an assault based on alleged sexual incident or of a sexual nature or something like that." The Court responded that "you can't keep the plaintiff from characterizing this from what [she] claims it is just because it has negative repercussions. I'm sorry, it is what it is." The trial judge continued: "But to come in here and hear the testimony that we've heard and not allow counsel to refer to it by, quite frankly, what it is alleged to have been, is putting a white elephant over there in the room and not talking about the white elephant." The trial court denied the motion.

¶17. On appeal, the Langs contend that this ruling was in error because the use of the words "should have been precluded . . . pursuant to [Mississippi Rule of Evidence] 403."

The Langs do not attempt to explain how Rule 403, which speaks to the admissibility of evidence, applies to arguments of counsel. No other authority is presented, nor is a standard of review outlined.

¶18. The Langs' briefing on this issue is insufficient to meet their burden to show error, and this issue is without merit. *See Jefferson*, 138 So. 3d at 265 (¶8).

### 4. Peepholes

¶19. The Langs next contend that Beasley's testimony regarding the peepholes – as well as several photographs admitted into evidence – should have been excluded under Mississippi Rule of Evidence 404 as evidence of prior bad acts. Although the Langs sometimes objected to this evidence over the course of its presentation during the trial, they never made this argument. "[A]n objection must be made with specificity, and failure to articulate the grounds for objection constitutes a waiver of the alleged error." *Smith v. State*, 986 So. 2d 290, 295 (¶13) (Miss. 2008) (citation omitted). Furthermore, "an objection on one or more specific grounds constitutes a waiver of all other grounds." *Id.* (citation omitted).

### 5. Cumulative Error

¶20. Finally, the Langs argue that minor errors accumulated to deny them a fair trial. As we find no errors have been shown, this issue is without merit.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS,**

**CARLTON AND MAXWELL, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**